No. 22-16051

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM F. FORREST, WENDY SMITH, MICHELLE MARTINEZ, JODI MILLER, and KENNETH TURNER,

*Plaintiffs-Appellants*,

v.

KEITH SPIZZIRRI, MIRIAM SPIZZIRRI; KEN MARING; CYNTHIA MOORE; PAT DOE, JOHN DE LA CRUZ, JANE DOE DE LA CRUZ, INTELLIQUICK DELIVERY, INC., MAJIK LEASING, LLC.; and MAJIK ENTERPRISES I, INC.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Arizona
No. CV-21-01688-PHX-GMS
Hon. G. Murray Snow

## APPELLANTS' REPLY BRIEF

Nicholas J. Enoch, AZ Bar No. 016473
Clara S. Acosta, AZ Bar No. 036044
Morgan L. Bigelow, AZ Bar No. 037516
LUBIN & ENOCH, P.C.
349 North Fourth Avenue
Phoenix, Arizona 85003
T: (602) 234-0008
E-mail: nick@lubinandenoch.com
*Attorneys for Appellants Forrest, et al*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITES ................................................................................... II

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 3

    I.    The Plain Language of the FAA Directs District Courts to Stay Actions Pending Arbitration Upon the Request of a Party. ................................................. 3

    II.   Intervening Supreme Court Authority Makes It Clear that the Plain Language of the FAA Prevails. ........................................................................................ 6

    III.  The FAA's Underlying Purpose is to Promote Quick and Early Arbitration, its Purpose is Not for Docket-Management ........................................................ 8

    IV.  Delivery Drivers Have Suffered Prejudice by the Dismissal They Would Not Have Sustained Had the Case Been Stayed. .................................................. 10

CONCLUSION ..................................................................................................... 10

CERTIFICATE OF COMPLIANCE .................................................................... 12

CERTIFICATE OF SERVICE .............................................................................. 13

# **TABLE OF AUTHORITES**

**Cases** .................................................................................................. Page(s)

*Arabian Motors Grp. W.L.L. v. Ford Motor Co.*,
  19 F.4th 938 (6th Cir. 2021) ............................................................................ 9

*Badgerow v. Walters*,
  142 S. Ct. 1310 (2022) ........................................................... 1, 2, 6, 7, 9, 10

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (2004) ......................................................................................... 1

*Connecticut Nat. Bank v. Germain*,
  503 U.S. 249 (1992) ......................................................................................... 1

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985) ................................................................................. 2, 7, 8

*Green Tree Fin. Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000) ........................................................................................... 1

*Kam-Ko Bio-Pharm Trading Co, Ltd. v. Mayne Pharma Inc.*,
  560 F.3d 935 (9th Cir. 2009) ........................................................................... 5

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015) ............................................................... 3, 8, 9, 10

*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014) ...................................................................... 3, 4

*Martin Marietta Aluminum, Inc. v. General Electric Co.*,
  586 F.2d 143 (9th Cir. 1978) ..................................................................... 3, 4, 5

*Meyer v. Fifth Third Bank*,
  842 Fed. App'x 104 (9th Cir. 2021) ................................................................ 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ............................................................................................. 9

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) (en banc) ...................................................... 5, 6

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009) ................................................................................... 2, 6, 7

**Statutes**

9 U.S.C. § 2 ......................................................................................................... 8
9 U.S.C. § 3 ..................................................................................................... 3, 5
9 U.S.C. § 4 ..................................................................................................... 2, 6
9 U.S.C. § 9 .................................................................................................. 2, 6, 7
9 U.S.C. § 10 ................................................................................................ 2, 6, 7
9 U.S.C. § 16(a)(3) ............................................................................................. 1

**Rules**

Fed. R. App. P. 32 ............................................................................................... 12

# INTRODUCTION

In their Answering Brief, Appellees Keith Spizzirri *et al.* (collectively "Intelliserve"[1]) assert: (1) under controlling circuit precedent, the district court had discretion to dismiss Appellants' (collectively, the "Delivery Drivers") Complaint; and (2) that the Delivery Drivers have suffered no prejudice from the dismissal. Both of these assertions fails. First, controlling Supreme Court authority has repeatedly stated that the process of interpreting a statute "begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (citing *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992)); *see also Badgerow v. Walters*, 142 S. Ct. 1310, 1329 (2022) (Breyer, J. dissent) ("Interpretation of a statute must, of course, be consistent with its text."). Specifically, the Supreme Court has applied close readings of the FAA's statutory text in a handful of cases. *See, e.g., Badgerow*, 142 S. Ct. at 1318. In *Green Tree Fin. Corp.-Ala. v. Randolph*, the Supreme Court instructed courts to apply "the plain language of the statutory text" in interpreting Section 16(a)(3) of the FAA. 531 U.S. 79, 88 (2000) (holding that the plain meaning of the term "final decision" in 9 U.S.C. § 16(a)(3) must be

---

[1] For ease of reference, the Delivery Drivers refer to Appellees collectively as "Intelliserve" as that is the entity that is party to the Independent Contractor Owner/Operator Agreement. The actual Appellees in this case are the ones listed in the caption.

applied). In *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985), Section 2 of the FAA's use of the word "shall" was held to impose a discretionless obligation on district courts to compel parties' to an arbitration agreement to arbitrate their dispute, "absent a grounds for revocation of the contractual agreement." In *Vaden v. Discover Bank*, 556 U.S. 49 (2009), the Court "proceeded methodically through Section 4's wording" and took their cue from the section's "distinctive language" to consider whether Congress had expanded federal court jurisdiction under Section 4. And finally, in *Badgerow v. Walters*, 142 S. Ct. 1310 (2022), the Court carefully contrasted the language found in Section 4 of the FAA to that found in Sections 9 and 10 to hold that under ordinary principles of statutory construction, Congress' omission of the "distinctive language" found in Section 4 "signal[ed], sharp and clear" that the section provided its own jurisdictional rule. Applying the plain meaning of Section 4's text is consistent with controlling Supreme Court authority.

Second, the Delivery Drivers disagree that they have not suffered prejudice from the district court's dismissal of their case. Having lost a forum in which an arbitral award could be reviewed and enforced, the Delivery Drivers will have to initiate a new suit, pay additional filing fees and court costs, and presumably, be assigned a new judge wholly unfamiliar with the case.

For these reasons and those explained below, the Delivery Drivers urge this Court to hold that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all the claims in the action have been referred to arbitration and a stay is requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).

## ARGUMENT

### I. The Plain Language of the FAA Directs District Courts to Stay Actions Pending Arbitration Upon the Request of a Party.

Intelliserve first argues that prior decisions of this Court have held that, "notwithstanding the language of [9 U.S.C.] § 3, district court may either stay the action or dismiss it outright when . . . the court determines that all the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). As Delivery Drivers explained in their Opening Brief, this idea originates from a string of cases starting with *Martin Marietta Aluminum, Inc. v. General Electric Co.*, 586 F.2d 143 (9th Cir. 1978). In *Martin Marietta*, the district court granted summary judgment to General Electric solely on the ground that Martin Marietta had failed to comply with the contractual provision in the parties' agreement to seek arbitration within six months of the action accruing and prior to instituting suit. *Id.* at 147. The court reasoned that since the six months had already lapsed without a request for arbitration, Martin Marietta had failed to meet a prerequisite for filing suit and its claims were

unavoidably barred. Id. In addressing the matter of whether the district court should have stayed, rather than dismiss the action pending arbitration, this Court explained that while "[t]he Act provides for a stay pending compliance with a contractual arbitration clause . . . a request for a stay is not mandatory." Id. The FAA does not impose a duty on either party to request a stay pending arbitration. Id. It follows that the district court was likewise under no obligation to stay the case absent a request from either party to do so. Since neither party requested a stay, the district court appropriately exercised its discretion to dismiss the case.

In its Response, Intelliserve cites to three cases—not previously briefed by Delivery Drivers—supposedly in support of a district court's authority to dismiss a case pending arbitration. One of these cases, *Meyer v. Fifth Third Bank*, 842 Fed. App'x 104 (9th Cir. 2021), is similar to *Martin Marietta* in that neither party asked for a stay. In *Meyer*, the parties had "unmistakably delegate[d] to arbitration all disputes 'arising out of or relating to the Agreement,' except those falling in a carve-out" that the Court found did not apply. 842 Fed. App'x at 106. The Ninth Circuit affirmed the dismissal by the district court, finding that the district court appropriately exercised its discretion to dismiss the case because "it lacked the power to adjudicate [Plaintiff's] claims." Id. (citing *Johnmohammadi*, 755 F.3d at 1074). However, just like in *Martin Marietta*, the district court was not obligated to issue a stay when neither party requested one.

4

In the second of the cases Intelliserve cites to, *Kam-Ko Bio-Pharm Trading Co, Ltd. v. Mayne Pharma Inc.*, this Court held that the district court did not err in determining that the arbitration clause in the parties' agreement was not substantively unconscionable under the FAA and the applicable state law. 560 F.3d 935, 939 (9th Cir.). In arriving at that conclusion, this Court explained that if a "court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Id.* at 940 (citing *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276−77 (9th Cir. 2006)). This recitation of the rule is consistent with both the FAA and this Court's holding in *Martin Marietta*: under the FAA, a district court shall stay an action pending arbitration upon the request of a party; however, where neither party requests a stay, the court may stay *or* dismiss. *Compare* 9 U.S.C. §3, with *Martin Marietta Aluminum, Inc.,* 586 F.2d at 147. However, unlike in *Martin Marietta*, one of the parties in *Kam-Ko* did request a stay pending arbitration; the district court granted that request, stayed the action, and directed the parties to proceed to arbitration. 560 F.3d at 939. This is the exact result Delivery Drivers are seeking here.

Finally, in the third case not previously briefed, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (en banc), the issue on appeal was whether the parties' arbitration provision in a written franchise agreement was valid and enforceable, thus "requiring the district court to stay proceedings and refer the

5

disputed franchise agreement to arbitration." 469 F.3d at 1263. There, finding that the district court erred in finding the arbitration provision valid and enforceable, this Court reversed and remanded without addressing whether the proper action in district court was to stay or dismiss the action while the parties arbitrated the dispute. Id. at 1294.

## II. Intervening Supreme Court Authority Makes It Clear that the Plain Language of the FAA Prevails.

In 2022, the Supreme Court issued its opinion in Badgerow, 142 S. Ct. 1310, which considered whether federal courts required "an independent jurisdictional basis" to resolve requests to confirm or vacate arbitral awards under Sections 9 and 10 of the FAA. In a previous opinion, the Court held that under Section 4 of the FAA, a federal court's authorization to compel arbitration proceedings if an agreement so contemplates does not itself create jurisdiction in federal courts. Vaden, 556 U.S. 49. After all, federal courts are courts of limited jurisdiction. See Badgerow, 142 S. Ct. at 1315. To establish jurisdiction, the district court must "look through" the petition to the "underlying substantive controversy" between the parties to determine whether the court has either federal question or diversity jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a). Id. at 1314. In reaching this conclusion, the Court "proceeded methodically through Section 4's wording" and relied on "distinctive language" in Section 4 of the FAA. Id.

In contrast, the Court in *Badgerow* found Sections 9 and 10 of the FAA lacked that "distinctive language." *Id.* at 1314, 1317 ("But Sections 9 and 10, in addressing applications to confirm or vacate an arbitral award, contain none of the statutory language on which *Vaden* relied."). Therefore, under ordinary principles of statutory construction, "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, [courts] generally take the choice to be deliberate." *Id.* at 1318. And once Congress has made its choice, "its decision governs." *Id.* Courts have "no warrant to redline the FAA." *Id.*

The *Badgerow* and *Vaden* opinions relied extensively on a close reading of the statutory text, specifically the FAA's Sections 4, 9, and 10. *See generally Badgerow*, 142 S. Ct. 1310; *Vaden*, 556 U.S. 49. These opinions "signal, sharp and clear" that federal courts are to rely on the FAA's plain language to effectuate Congress' will. *Badgerow*, 142 S. Ct. 1319, 1322 ("[W]e must respect that evident congressional choice.").

Applying a close reading of the statutory text is also consistent with the Supreme Court's reading of Section 2 of the FAA in *Dean Witter Reynolds Inc.*, 470 U.S. 213. Under Section 2 of the FAA, "an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, *shall* be valid, irrevocable, and enforceable, save upon such grounds as exist at law

7

or in equity for the revocation of any contract or as otherwise provided . . . ." 9 U.S.C. § 2 (emphasis added). The Supreme Court has interpreted "shall" in Section 2 to be compulsory:

> By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. [9 U.S.C.] §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

Dean Witter Reynolds Inc., 470 U.S. at 218. Congress used the same compulsory "shall" for compelling parties to arbitrate disputes under Section 2 as it did to compel actions be stayed in federal court pending arbitration under Section 3. Thus, "shall" should be interpreted the same way in Section 3 as it was in Section 2 of the FAA.

### III. The FAA's Underlying Purpose is to Promote Quick and Early Arbitration, its Purpose is Not for Docket-Management

In Footnote 2 of its Response, Intelliserve argues that dismissing, rather than staying a case pending arbitration "imposes less of an administrative burden on the court" and that "[i]n any event, such administrative questions are committed to the sound discretion of the district court." (Intelliserve Br. 10). Delivery Drivers disagree on both counts. First, staying, rather than dismissing the case, allows the parties to proceed to arbitration directly, "unencumbered by the uncertainty and expense of additional litigation." Katz, 794 F.3d at 346−47. This "is consistent

8

with the FAA's underlying policy 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)); *see Badegrow*, 142 S. Ct. at 1327 (Breyer, J. dissenting) ("We have recognized that the statute reflects a clear policy of rapid and unobstructed enforcement of arbitration agreements.") (internal quotation marks and citations omitted).

Second, "the [FAA] is not a docket-management statute;" its purpose is not to "clean[] out court dockets." *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 943 (6th Cir. 2021). As the Second Circuit explained in *Katz*:

> We recognize that efficient docket management is often the basis for dismissing a wholly arbitrable matter. *See, e.g., Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) (finding that "no useful purpose will be served by granting a stay"); *Reynolds v. de Silva*, No. 09 Civ. 9218(CM), 2010 U.S. Dist. LEXIS 18040, 2010 WL 743510, at *9 (S.D.N.Y. Feb. 24, 2010) (finding it an "inefficient use of the Court's docket to stay the action"). But this is not reason enough. While district courts no doubt enjoy an inherent authority to manage their dockets, *Link v. Wabash R.R.*, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962); *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014), that authority cannot trump a statutory mandate, like Section 3 of the FAA, that clearly removes such discretion. *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) ("[J]udges must place enforcement of the [Prison Litigation Reform Act's administrative-exhaustion requirement] over a concern for efficient docket management."); *In re Prevot*, 59 F.3d 556, 566 (6th Cir. 1995) ("A court has the inherent power to manage its docket, subject of course to statutes requiring special treatment for specified types of cases."); *Marquis v. FDIC*, 965 F.2d 1148, 1154 (1st Cir. 1992) ("It is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending

9

litigation when the efficacious management of court dockets reasonably requires such intervention.").

794 F.3d at 346−47. Thus, a mandatory stay promotes both the underlying purpose of the FAA and also administrative efficiency.

### IV. Delivery Drivers Have Suffered Prejudice by the Dismissal They Would Not Have Sustained Had the Case Been Stayed.

The Delivery Drivers disagree that they have not suffered prejudice from the district court's dismissal of their case. The Delivery Drivers already had a forum in which an arbitral award could be reviewed and enforced. Having had their case dismissed, they will now need to reinstitute suit, pay additional filing fees and court costs, and presumably, be assigned a new judge wholly unfamiliar with the case.

Moreover, it is not the role of the Court to rewrite a statute or ignore a clear directive by Congress. *Badgerow*, 142 S. Ct. at 1318. Not "[e]ven the most formidable policy arguments can[] overcome a clear statutory directive." *Id.* at 1321. Delivery Drivers urge the Court not to ignore the statutory language here.

### CONCLUSION

"[W]hile we recognize the impetus for a rule permitting dismissal, we conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all the claims in the action have been referred to arbitration and a stay is requested." *Katz*, 794 F.3d at 347. Delivery Drivers urge the Court

10

to conclude the same, and reverse and remand this action to the district court so that the action may be stayed pending the parties' arbitration.

Respectfully submitted this 9th day of December 2022,

                LUBIN & ENOCH, P.C.

                *s/ Morgan L. Bigelow*
                Morgan L. Bigelow
                Nicholas J. Enoch
                Clara S. Acosta

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains approximately 2,661 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Microsoft 365 Times New Roman 14-point font.

Date: December 9, 2022

LUBIN & ENOCH, P.C.

*s/ Morgan L. Bigelow*
Morgan L. Bigelow
Nicholas J. Enoch
Clara S. Acosta

*Attorneys for Appellants Forrest, et al*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2022, I electronically filed the foregoing, **REPLY BRIEF OF APPELLANT**, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: December 9, 2022

        LUBIN & ENOCH, P.C.

        *s/ Morgan L. Bigelow*
        Morgan L. Bigelow
        Nicholas J. Enoch
        Clara S. Acosta

        *Attorneys for Appellants Forrest, et al*